# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. PALMER,<br><br>        Plaintiff,<br><br>    v.<br><br>CROTTY, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:07-CV-00148-LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(DOC. 50)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

**Findings And Recommendation**

**I.    Procedural History**

Plaintiff Steven M. Palmer ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation. Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's second amended complaint against Defendant Harold Tate for violation of the Eighth Amendment. Pending before the Court is Defendant's motion for summary judgment, filed May 14, 2010. Doc. 50, Def.'s Mot. Summ. J. Plaintiff filed his opposition on July 26, 2010.[1] No reply was filed. The matter is submitted pursuant to Local Rule 230(l).

///

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on January 14, 2009. Doc. 22, Second Informational Order; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).
    Pursuant to Local Rule 230(l), Plaintiff's opposition was due within 21 days after service of Defendant's motion. Plaintiff's opposition is untimely. Out of an abundance of caution, the Court has nonetheless reviewed Plaintiff's opposition.

1

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[2]  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

---

[2] The Federal Rules of Civil Procedure were updated effective December 1, 2010.

suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

///

//

3

### III.   Undisputed Facts[3]

Plaintiff is a prisoner properly in the custody of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff does not have any medical training nor is he a medical doctor.  Between January 27, 2005, and October 18, 2005, Plaintiff was incarcerated at California Correctional Institution – Tehachapi (CCI) in Tehachapi, California.  Although Plaintiff was a prisoner at CCI until October 18, 2005, this lawsuit only concerns the time period between January 27, 2005, and April 17, 2005.

At all times relevant to this suit, Defendant Harold Tate, M.D., was the Chief Medical Officer (CMO) at CCI.  Plaintiff is suing Defendant Tate based upon his role as the supervisor of the medical staff.

On January 27, 2005, at 8:35 a.m., Plaintiff injured his lower back.  Plaintiff was transported from CCI to the Tehachapi Valley Healthcare Division Emergency Room by ambulance.  While at the Tehachapi Valley Healthcare Division Emergency Room, medical staff examined and took an x-ray of Plaintiff's lumbar spine and pelvis.  The findings of both the lumbar spine x-ray and pelvis x-ray were normal, indicating there was no serious injury to Plaintiff's lower back.

After his examination at the Tehachapi Valley Healthcare Division Emergency Room, Plaintiff was transported by ambulance to Mercy Hospital in Bakersfield, California, for a Magnetic Resonance Imaging (MRI) of his spine.  While at Mercy Hospital, Plaintiff received an MRI of his lumbar spine.

The findings of Plaintiff's MRI showed that there was a slight decreased signal at the L5-S1 disc consistent with desiccation phenomenon of aging. Normal vertebral bodies were noted and the spinal canal was widely patent.  Plaintiff's MRI findings were consistent with an "Age Normal MRI," meaning that the results of the MRI are what one might expect when a

---

[3] All facts are taken from Defendant's statement of undisputed facts and are considered undisputed, unless otherwise noted.  Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial").  Plaintiff did not deny any of Defendant's undisputed facts.

4

1  person ages, rather than when a person has a serious injury to the lower back.

2      After being treated at Mercy Hospital and discharged, Plaintiff arrived back at CCI on
3  January 28, 2005.  A doctor examined Plaintiff at CCI in the afternoon of January 28, 2005, and
4  prescribed Ibuprofen (Motrin) and Robaxin (Methocarbamol) for Plaintiff's lower back pain.  On
5  January 28, 2005, Plaintiff was issued a lower tier (the first floor of the ASU) and lower bunk
6  (the bottom bunk bed) chrono.

7      On February 9, 2005, Plaintiff was examined by a Registered Nurse (RN), requested a
8  shower chair, and was issued a shower chair chrono.  On March 1, 2005, Plaintiff's lower back
9  was examined and his prescriptions for Motrin and Robaxin were renewed.  On March 4, 2005,
10 Plaintiff had a follow-up appointment. He was prescribed Motrin, Robaxin, and referred to an
11 orthopedist. On March 29, 2005, an RN examined Plaintiff and on March 30, 2005, Motrin was
12 prescribed for Plaintiff's back pain.

13     On April 17, 2005, Plaintiff slipped and re-injured his back.  On April 17, 2005, Plaintiff
14 was placed in the infirmary. Thereafter, Plaintiff did not have issues with his medical care.
15 Defendant Tate played no role in Plaintiff's medical treatment.  As the CMO, Defendant Tate
16 was primarily an administrator and rarely treated inmates. Defendant Tate never met Plaintiff,
17 had a conversation with him, or read anything from him.

18     At all times relevant to this suit, Defendant Tate opines that Plaintiff received reasonable
19 and proper medical care for his condition.[4]  Defendant Tate never intentionally or knowingly
20 caused Plaintiff to experience any pain, suffering, or injury.  Defendant Tate never refused to
21 provide Plaintiff with necessary care or treatment.  Defendant Tate is not aware of anyone that
22 refused to provide Plaintiff with necessary medical care or treatment.

23     At all times relevant to this suit, no doctor, nurse, or medical technical assistant ever
24 discussed Plaintiff's medical condition, care, or treatment with Defendant Tate.  On October 18,
25 2005, Plaintiff was transferred from CCI to Salinas Valley State Prison (SVSP).  Plaintiff is

26

27     [4] Defendant asserts that in his expert medical opinion, Plaintiff received reasonable and proper care.
28 Defendant has not demonstrated his qualifications as an expert in this matter.  *See* Fed. R. Evid. 702.  Thus, the statement of fact has been modified to reflect that it is Defendant's opinion.

5

currently incarcerated at California State Prison-Los Angeles (CSP-Los Angeles). Defendant Tate does not work at CSP-Los Angeles. Defendant Tate does not have any authority or control over CSP-Los Angeles. Defendant Tate does not have any authority or control over Plaintiff.

**IV.     Analysis**

    **A.     Legal Standard**

          1.     Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment. "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

          2.     Supervisory Liability

The term "supervisory liability," which is loosely and commonly used by both courts and litigants alike, is a misnomer. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a

6

theory of *respondeat superior*." *Id.* at 1948.  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct.

When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  For a cognizable claim for relief under § 1983 for supervisory liability, Plaintiff must demonstrate some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B.    Defendant Tate**

Defendant Tate contends that he is not liable under § 1983 based on his role as a supervisor.  Mem. P. &. A. Support Mot. Summ. J. 6:4-11.  Defendant also contends that he is not liable as he did not participate in Plaintiff's medical treatment in any way.  *Id.* 7:24-8:14.  Defendant contends that Plaintiff's medical treatment was proper under the circumstances.

Plaintiff in opposition contends that Defendant is liable under a theory of respondeat superior liability.  Pl.'s Opp'n 2-3.  Plaintiff's argument fails as a matter of law.  There is no respondeat superior liability under § 1983.  Even construing the facts in the light most favorable to the non-moving party, the Court finds no facts that can support a cognizable § 1983 claim against Defendant Tate.  There are no facts that indicate Defendant Tate personally participated in any alleged constitutional deprivation, knew of any constitutional violations and failed to act, or implemented a constitutionally deficient policy.  *Hansen*, 885 F.2d at 646; *Taylor*, 880 F.2d at 1045.  Defendant Tate is entitled to summary judgment.  Because Defendant Tate is entitled to summary judgment, the Court declines to address Defendant's qualified immunity or other arguments.

///

**V.     Conclusion And Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendant's motion for summary judgment, filed May 14, 2010, should be GRANTED in full;

2.     Judgment should be entered in favor of Defendant Tate and against Plaintiff; and

3.     The Clerk of the Court be directed to close this action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **December 20, 2010**                         **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE